ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
PATRICK RICARDO SMITH,

              Plaintiff,

- against -

WESTCHESTER COUNTY
DEPARTMENT OF CORRECTIONS,
WARDEN AMICUCCI;
CORRECTIONS OFFICER GOTTLOB;
CORRECTIONS OFFICER RENNALLS
#634; EMERGENCY RESPONSE
TEAM, SARGEANT JOHN DOE,

              Defendants.
------------------------------------------------------- X

**OPINION AND ORDER**

07 Civ. 1803 (SAS)

0 5 6 ≈ 9

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

       Patrick Ricardo Smith, proceeding pro se, brings this action against Warden Amicucci; Corrections Officers ("COs") Gottlob and Rennalls #634; and Sargeant [sic] John Doe of the Emergency Response Team (together, "defendants"), pursuant to 42 U.S.C. § 1983 ("section 1983").[1] Smith alleges that

---

[1] Smith does not name Westchester County Department of Corrections as a defendant. A letter from Smith to the Court dated July 16, 2007 stated that "the Westchester County Department of Corrections was never intended to be listed as a defendant" and "a punctuation error occurred where there should have been an apostrophe (s) at the end of the word, correction, indicating the warden

-1-


Returned to chambers for scanning on 2/11/08
Scanned by chambers on _____

MICROFILMED FEB - 8 2008 -12:00 PM

he was assaulted and injured by defendants at the WCDOC and seeks relief for their use of excessive force in violation of the Eighth Amendment. Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds: (1) plaintiff did not exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"); (2) plaintiff fails to state a claim against Warden Amicucci; and (3) plaintiff fails to allege that his constitutional injuries resulted from a municipal policy or custom. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## II. BACKGROUND[2]

### A. Facts

Smith was a pretrial detainee at the WCDOC and is currently an inmate at the Pasquotank Correctional Institution in Elizabeth City, North Carolina. On December 5, 2006, Smith was assaulted for seven minutes by Correction Officers Rennalls, Gottlob and Sergeant John Doe of the Emergency

---

belonging to the Westchester County Department of Corrections." 7/16/07 Plaintiff Letter to the Court ("Smith Letter"), at 2-3. In addition, no attempt at service was made upon the County.

[2] The facts summarized in this Opinion are drawn from the Complaint and are presumed to be true for purposes of this motion.

Response Team, while in the temporary custody of the WCDOC.[3] As a result of this assault, Smith tore the Achilles tendon of his right foot, which rendered him unable to walk without the use of crutches for five weeks.[4] After the incident, Smith made several requests for medical treatment through the jail's sick call procedure.[5] Once tests were performed, he was diagnosed with a torn Achilles tendon.[6] He was prescribed pain medication for the injury and was authorized to see a foot specialist to determine if surgery was necessary.[7] Smith was returned to the North Carolina Department of Corrections before he was seen by the foot specialist.[8] On June 28, 2007, after several requests to prison officials in North Carolina, Smith was taken to an orthopedist and was advised that he would need surgery to repair the tendon.[9] The surgery was performed at Albe-Marie Hospital

---

[3] *See* Complaint ("Compl.") § II(D).

[4] *See id.* § III (alleging that Smith still lacks the ability to walk correctly due to severe pain).

[5] *See* 11/15/07 Affidavit of Plaintiff in Support of Motion in Opposition to Defendant's [sic] Motion to Dismiss ("Smith Aff."), at 2.

[6] *See id.*

[7] *See id.*

[8] *See id.*

[9] *See id.* at 3.

in Elizabeth City, North Carolina on August 1, 2007.[10]

Smith admits that the WCDOC had a grievance procedure in place at the time that his claim arose.[11] However, he did not file a grievance in accordance with these procedures because he believed that the grievance procedure did not cover the "injuries he sustained from [the] staff."[12] He was informed by Sergeant Dickstein, upon a request for a grievance form, that his complaint was not a grievable issue.[13] Dickstein said that he would not issue Smith a grievance form and also suggested that Smith should have his family hire a lawyer and file a suit.[14] Based upon the assault, Smith seeks monetary damages in the amount of $3,300,000.00. He also asks the Court to direct members of the Emergency Response Team to display their names and badge numbers while on duty. Finally, Smith asks that COs Gottlob and Rennalls be suspended without pay for ninety days.[15]

---

[10]  *See id.*

[11]  *See* Compl. § IV(B).

[12]  *See id.* § IV(D).

[13]  *See id.* § IV(I)

[14]  *See id.*

[15]  *See id.* § V.

## III. LEGAL STANDARD

### A. Motion to Dismiss

When deciding a defendant's motion to dismiss under Rule 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint"[16] and "draw all inferences in the light most favorable to the non-moving party[]."[17] Nevertheless, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[18]

In deciding a motion to dismiss, the court is not limited to the face of the complaint, but "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[19] However, "before materials outside the record may become the basis for a dismissal . . . it must be clear on the record that no dispute exists regarding the

---

[16] *Bell Atlantic Corp. v. Twombly,* — U.S. —, 127 S. Ct. 1955, 1964 (2007). *Accord In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

[17] *In re NYSE Specialists*, 503 F.3d at 95.

[18] *Id.* (quotation omitted).

[19] *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

authenticity or accuracy of the document."[20]

"Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[21] To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."[22] Although the complaint need not provide "detailed factual allegations,"[23] it must "amplify a claim with some factual allegations . . . to render the claim *plausible*."[24] The standard is no longer that a complaint can be dismissed only if there is "no set of facts" that plaintiff could prove "which would entitle him to relief."[25] Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations

---

[20] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[21] *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[22] *See Bell Atlantic*, 127 S. Ct. at 1970.

[23] *Id.* at 1964. *Accord ATSI*, 493 F.3d at 98 n.2 (applying the standard of plausibility outside *Twombly's* anti-trust context).

[24] *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

[25] *Bell Atlantic*, 127 S. Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 45-46 (1957)). *Accord id.* ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

sufficient 'to raise a right to relief above the speculative level.'"[26]

B. **Exhaustion of Administrative Remedies**

The PLRA mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions.[27] The PLRA's exhaustion requirement is mandatory.[28] Failure to exhaust is an absolute bar to an inmate's action in federal court: "[section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all*."[29] Because the plain language of section 1997e(a) states "no action shall be brought," an inmate must have exhausted his claims at the time of the initial filing, given that "[s]ubsequent exhaustion after suit is filed . . . is insufficient."[30] Moreover, the exhaustion of administrative remedies must be *proper* – that is, in compliance with a prison grievance program's deadlines and

---

[26] *ATSI*, 493 F.3d at 98 (quoting *Bell Atlantic*, 127 S. Ct. at 1965).

[27] *See* 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

[28] *See Porter v. Nussle,* 534 U.S. 516, 516 (2002). *See also Booth v. Churner*, 532 U.S. 732, 739 (2001).

[29] *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir. 2001) (quotation marks and citation omitted, emphasis in original).

[30] *Id.*

other critical procedural rules – in order to suffice.[31] The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[32]

While the Second Circuit has recognized that the PLRA's exhaustion requirement is mandatory, it has also recognized three exceptions to the exhaustion requirement:

> when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as reasonable misunderstanding of the grievance procedure, justify the prisoner's failure to comply with the exhaustion requirement.[33]

The Second Circuit has recently held that "'[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought,' . . . does not constitute proper exhaustion."[34] Further, "notice alone is insufficient because

---

[31] *See Woodford v. Ngo*, 126 S. Ct. 2378, 2386-87 (2006).

[32] *Porter*, 534 U.S. at 532.

[33] *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).

[34] *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (quoting *Braham v. Clancy*, 425 F.3d 177, 184 (S.D.N.Y. 2005) and citing *Woodford*, 126 S. Ct. at 2388) (finding plaintiff "cannot satisfy the PLRA's exhaustion requirement solely by filing two administrative tort claims, or by making informal complaints to the

-8-

'[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance' and '[t]he prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules.'"[35]

## IV. DISCUSSION

The instant motion presents three issues: (1) whether administrative remedies were available to Smith, (2) whether defendants are estopped from asserting exhaustion as a defense, and (3) whether special circumstances excuse Smith's failure to exhaust administrative remedies.

### A. Administrative Remedies Were Not Available to the Smith

To be available, an administrative remedy must "afford the possibility of some relief for the action complained of."[36] In some circumstances, the behavior of the defendant may render administrative remedies unavailable.[37] To the extent that plaintiff lacked available administrative remedies, the PLRA's

---

MDC's staff").

[35] *Id.* (quoting *Woodford*, 126 S. Ct. at 2388).

[36] *Booth,* 532 U.S. at 738.

[37] *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (remanded case to the district court to determine the question of whether some seemingly available remedies were rendered unavailable by threats made by correction officers).

exhaustion requirement does not apply.[38]

There is no dispute here that the prison provided grievance procedures to be used by inmates claiming excessive force. WCDOC has a well established and comprehensive Grievance Program that is approved by the New York State Commission on Corrections. Smith's claim of assault by correction officers is the proper subject of a grievance by an inmate and would be a grievable issue under the procedures in place.

However, this does not end the inquiry. The test for deciding whether the ordinary grievance procedures were available is an objective one, in which the Court inquires into whether "'a similarly situated individual of ordinary firmness' [would] have deemed them available."[39] In his Complaint, Smith alleges that Sergeant Dickstein refused to give him a grievance form, told him that this incident was not a grievable issue, and suggested that his family hire a lawyer and bring suit. Also, in his Affidavit in Support of his Opposition to Defendants' Motion to Dismiss Smith claims that he tried to file a grievance regarding the present incident but no supervisors "would accept [his] grievance once it was written because of the magnitude of its accusations of named individuals therein

---

[38] *See id.*

[39] *Id.* at 688.

and the relief requested."[40] The actions by Sergeant Dickstein and the supervisors at WCDOC, which I must assume occurred, rendered existing administrative remedies unavailable to Smith. It is reasonable for a prisoner of "ordinary firmness"[41] to believe that administrative remedies were not available when that prisoner was: denied the ability to file a grievance, denied a grievance form, and told by a Sergeant that the issue he was seeking to grieve was not grievable.

It is well established that "when [a] plaintiff proceeds pro se . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations."[42] Moreover, because plaintiff is proceeding pro se, the factual allegations raised in his affidavit in opposition will be treated as an amendment to his Complaint.[43] Assuming Smith's allegations to be true, as I must, I conclude that because administrative remedies were not available to Smith,

---

[40] Smith Aff. at 4.

[41] *Hemphill*, 380 F.3d at 688.

[42] *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

[43] *See Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering pro se plaintiff's affidavit in opposition to defendant's motion to dismiss in reviewing district court's dismissal claim); *Donahue v. United States Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y. 1990) ("The policy reasons favoring liberal construction of *pro se* pleadings warrant the Court's consideration of the allegations contained in plaintiffs' memorandum of law, at least where those allegations are consistent with the allegations in the complaint.").

his failure to exhaust was justified.⁴⁴

### B. Plaintiff Fails to State a Cause of Action Against Warden Amicucci

The Second Circuit has held that "'personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under [section] 1983.'"⁴⁵ There are several ways in which a supervisory official may be personally involved in a constitutional deprivation within the meaning of section 1983: (1) direct participation in the infraction; (2) failure to remedy the wrong after learning of the violation through a report or appeal; (3) creation of a policy or custom under which unconstitutional practices occurred, or permitting such a policy or custom to continue; and (4) gross negligence in managing subordinates who caused the unlawful condition or event.⁴⁶ If the plaintiff fails to allege that a defendant was personally responsible for the

---

⁴⁴ In addition to this justification for Smith's failure to exhaust, he has a strong claim under exceptions two and three as well. Assuming Smith's allegations as true, he has an argument that the defendants' actions may estop them from asserting non-exhaustion as a defense and special circumstances may exist that justify Smith's failure to exhaust.

⁴⁵ *Johnson v. Newburgh Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

⁴⁶ *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004).

-12-

purported unlawful conduct, the complaint is fatally defective and must be dismissed as to that defendant.

Smith names Warden Amicucci as a defendant, but makes no allegation of personal involvement or of supervisory responsibility. Accordingly, defendants' motion to dismiss is granted as to Warden Amicucci, who is dismissed from this lawsuit.

## C. Municipal Liability

Any claims against the defendants in their official capacity must be dismissed. "The language of [section] 1983, read against the background of the . . . legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[47] A municipality "may not be held liable on a theory of respondeat superior."[48] Thus, in order for an individual deprived of a constitutional right to have recourse against a municipality under section 1983, he must show that he was harmed by a municipal "policy" or

---

[47] *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[48] *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000). *Accord Monell*, 436 U.S. at 691.

-13-

"custom."⁴⁹ A custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a municipal employee.⁵⁰ Furthermore, "there must be proof of such a custom or policy in order to permit recovery against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself."⁵¹ While Smith had not sued Westchester County directly, he has brought claims against the defendants in their official capacity. Accordingly, for these claims to survive, Smith must sufficiently allege a custom or policy.

Smith fails to allege that he was harmed by a municipal custom or policy. He complains of a single instance of alleged unconstitutional conduct by employees of Westchester County. He does not allege that their actions were taken pursuant to a custom or policy. Smith's claim against the defendants in their official capacity are dismissed and his claims are construed to be against the

---

⁴⁹ *Monell*, 436 U.S. at 690-91.

⁵⁰ *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) (Brennan, J., concurring in part and concurring in the judgment) (stating that "[t]o infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in *Monell*").

⁵¹ *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) (citing *Hafer v. Melo*, 502 U.S. 21 (1991)).

-14-

defendants solely in their individual capacity.

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied in part and granted in part. The Clerk of the Court is directed to close this motion [# 8 and #16]. A conference is scheduled for February 25, 2008 at 4:00 P.M.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
February 7, 2008

## - Appearances -

### Plaintiff (Pro Se):

Patrick Ricardo Smith
ID # 0378802
Pasquotank Correctional Institution
527 Commerce Drive
Elizabeth City, NC 27909


### For Defendants:

Shannon S. Brady
Senior Assistant County Attorney
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, NY 10601
(914) 995-3740