UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PATRICK R. SMITH,

                 Plaintiff,

      - against -

WESTCHESTER COUNTY
DEPARTMENT OF CORRECTIONS,
WARDEN AMICCUCI; CORRECTION
OFFICER GOTTLOB; CORRECTION
OFFICER RENNALLS # 634;
EMERGENCY RESPONSE TEAM,
SERGEANT JOHN DOE,

               Defendants.
------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  2/15/12
```

**OPINION AND ORDER**

**07 Civ. 1803 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

       Patrick R. Smith, initially proceeding pro se, brought suit pursuant to

42 U.S.C. § 1983 ("section 1983") claiming that he was subjected to excessive

force while in the custody of the Westchester County Department of Corrections

("WCDOC").[1] More specifically, Smith claimed that he was assaulted by

Correction Officer Neil Gottlob, Correction Officer Hugh Rennalls and Sergeant

---

[1]    *See* Complaint under the Civil Rights Act, 42 U.S.C. § 1983
("Complaint"), attached as Ex. D to the Declaration of Shannon S. Brady in
Opposition to Plaintiff's Motion to Amend the First Amended Complaint ("Brady
Decl.").

John Doe of the Westchester County Emergency Response Team Unit ("ERT")[2] on December 5, 2006, in the booking area of the Westchester County Jail.[3]  Plaintiff now moves for permission to file a Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 15 ("Rule 15"), to add Correction Officer Derrick Holmes as a defendant in place of Correction Officer Hugh Rennalls.[4]  For the following reasons, plaintiff's motion is DENIED.

## I.    BACKGROUND

Plaintiff filed his pro se Complaint on March 1, 2007, and the 120-day period for service set forth in Federal Rule of Civil Procedure 4(m) ("Rule 4(m)") expired on June 29, 2007.   On July 7, 2008, Officers Gottlob and Rennalls (the

---

[2]     *See* Complaint § II.D.  Sergeant John Doe was later identified as Sergeant Francis DelGrosso in a letter dated July 8, 2008, from Shannon Brady to plaintiff.  *See* 7/8/08 Letter from Brady to Smith, Ex. B to the Brady Decl. (incorrectly listed as Exhibit F in the Brady Decl. ¶ 9).

[3]     The applicable statute of limitations expired on December 5, 2009.

[4]     Officer Rennalls was dismissed from this lawsuit in an Order dated October 21, 2011.  *See* 10/21/11 Order, Ex. 15 to the Declaration of Michael Deem in Support of Plaintiff's Motion to File a Second Amended Complaint ("Deem Decl.").  Defendant Warden Amicucci was dismissed from this lawsuit because plaintiff failed to allege any personal involvement or supervisory responsibility on his part.  *See Smith v. Westchester County Dep't of Corr.*, No. 07 Civ. 1803, 2008 WL 361130, at *4 (S.D.N.Y. Feb. 7, 2008).  The claims against the individual defendants in their official capacity were also dismissed.  *See id.* at *5 (official capacity claims dismissed because Smith failed to allege that he was harmed by a municipal custom, policy or practice).  Accordingly, plaintiff's claims are "construed to be against the defendants solely in their individual capacity."  *Id.*

"County Defendants") served plaintiff with their automatic disclosures pursuant to Federal Rule of Civil Procedure 26(a) (the "Rule 26(a) Disclosures").  In the Rule 26(a) Disclosures, the County Defendants identified the following individuals as likely to have discoverable information:  Captain Stephen McMahon, Sergeant James McGuire, Correction Officer Sebastian DiPaterio, Correction Officer Neil Gottlob, Correction Officer Kevin Kavana, Sergeant Francis DelGrosso, Correction Officer Daniel Cortes, and Warden Anthony Amicucci.[5]  Defendants' Rule 26(a) Disclosures did not, however, list Officers Derrick Holmes and Marcelo Diaz even though they were responding ERT members who were present during the incident.  Nor did the Rule 26(a) Disclosures list Officer Rennalls, even though he is named in the original Complaint as the officer who twisted plaintiff's foot. Officers Holmes and Diaz were first identified in a May 5, 2011 letter from Shannon Brady, counsel for the County Defendants, to this Court.[6]  The County

---

[5]    *See* Defendants' Rule 26(a) Disclosures, Ex. 3 to the Deem Decl., at ¶¶ A(1)-(8).  The County Defendants also disclosed "[a]s yet unidentified officers that were present during the December 5, 2006 incident that forms the basis of this lawsuit and/or that had contact with Plaintiff while he was incarcerated at the Westchester County Department of Correction."  *Id.* ¶ A(9).

[6]    *See* 5/5/11 Brady Letter at 4 ("The members of the team were: Sergeant Francis DelGrosso, Officer Hugh Rennalls, Officer Derrick Holmes, Officer Salvatore Ficarrotta, Officer Marcelo Diaz, Officer Donald Davis and Officer Jeffrey Camera.").  Although identification of the ERT members was a step in the right direction, merely knowing their names was of little use to plaintiff who still could not identify who did what and where without a witness to assist in the

Defendants also identified documents within their possession which included, *inter alia*, "Reports and/or video prepared by officers and supervisors as a result of the incident that occurred on December 5, 2006."[7]

Depositions followed: on February 12, 2009, plaintiff was deposed; on February 18, 19 and 20, 2009, plaintiff took the depositions of Officer Rennalls, Sergeant DelGrosso and Officer Gottlob, respectively, telephonically and while still proceeding pro se. During Sergeant DelGrosso's deposition, plaintiff asked for the names of the other ERT officers who responded with Sergeant DelGrosso.[8] Sergeant DelGrosso responded by identifying Officers Rennalls and Ficarrotta but then claimed that he did not have the names of the other officers in front of him.[9] At this point, defense counsel interjected that, in answering plaintiff's question, Sergeant DelGrosso was referring to a report previously identified as County Exhibit H.[10] Plaintiff asked Officer Rennalls a similar question to which Officer

_____

simultaneous viewing of the DVD.

[7]   Rule 26(a) Disclosures ¶ B(4). C.O. Daniel Cortes is the ERT member who videotaped the ERT's response to the incident in issue. *See id.* ¶ A(7).

[8]   *See* 2/19/09 Transcript of the Deposition of Sergeant Francis M. DelGrosso at 6.

[9]   *See id.* at 7.

[10]   *See id.* County Exhibit H identifies Captain Steven McMahon, Officer Andre Mabra, Officer Sebastiano DiPaterio, and Sergeant James McGuire.

Rennalls replied that he could only identify Sergeant DelGrosso.[11]

During the deposition of Officer Gottlob, Brady notified plaintiff of her intention to send him the "DVD of the ERT video" (the "DVD").[12]  On June 4, 2009, Magistrate Judge Ronald L. Ellis signed an Order directing the North Carolina Department of Correction ("NCDOC"), who had custody of Smith at the time, to permit plaintiff to view the DVD .[13]  On June 15, 2009, plaintiff received a copy of the DVD which the NCDOC permitted him to view.  On June 23, 2009, plaintiff filed a Rule 26 disclosure, stating his intention to use the DVD as trial evidence.[14]

On January 13, 2011, Michael A. Deem filed a Notice of Appearance on plaintiff's behalf.  On May 26, 2011, three weeks after the receipt of Brady's letter identifying all of the members of the ERT, plaintiff filed his First Amended Complaint ("FAC").[15]  In the FAC, plaintiff alleges that upon being released from

---

[11]      See 2/18/09 Transcript of the Deposition of Officer Hugh Rennalls at 8.

[12]      2/19/09 Deposition of Officer Neil Gottlob, Ex. 8 to the Deem Decl., at 12.

[13]      See 6/4/09 Order, Ex. 9 to the Deem Decl.

[14]      See Plaintiff's disclosures pursuant to Rule 26, Ex. 10 to the Deem Decl.

[15]      Although the FAC was filed after the statute of limitations expired on December 5, 2009, this Court granted plaintiff permission to file this complaint.

his holding cell the morning of December 5, 2006, he approached another inmate.[16] This behavior alerted Officer Gottlob who tackled plaintiff, bringing both of them to the ground.[17]  Plaintiff claims that he was then "kicked, punched and beaten . . . the face, groin and stomach by several uniformed correction personnel of the Jail[.]"[18]  Members of the ERT responded to the incident and Officer Rennalls was one of the first ERT members to arrive on the scene.[19]  According to plaintiff, while he was lying on the ground being kicked, punched and beaten, "C.O. Rennals [sic] grabbed Mr. Smith's right foot and intentionally or recklessly twisted it with great force, causing Mr. Smith to suffer a severe tear to his Achilles tendon."[20]  In no uncertain terms, plaintiff identified Officer Rennalls as the person who twisted his leg, causing injury to his Achilles tendon.  Plaintiff first identified Officer Rennalls as the person who twisted his foot in his original pro se Complaint, stating:

_____

See 5/5/11 Conference Transcript at 36.

[16]     See FAC ¶¶ 13-14.

[17]     See id. ¶ 15.

[18]     Id. ¶ 17.

[19]     See id. ¶¶ 24-25.  While Officer Holmes was one of the responding ERT members, there is no evidence that he was present before the ERT arrived.

[20]     Id. ¶ 26.

> Officer Gottlob jumped on my back and wrapped his arm around my neck and his weight brought me to the floor. While on the floor, Emergency Response Team Sargeant [sic] John Doe kicked me in the scrotum, then Officer Rennalls #634 twisted my right foot and kept twisting it while Sargeant [sic] John Doe of the Emergency Response Team repeatedly kick[ed] me in my side and stomach.  I kept screaming I'm not resisting until someone maced me in my mouth.  Gottlob's arm was around my neck from behind during the entire incident.[21]

Plaintiff maintained his identification of Officer Rennalls during his deposition, where he testified as follows:

> Q.   When ERT arrived, were there any officers holding you?  You indicated you were laying on your side; was anyone holding you down at that point?
>
> A.   Yes, Officer Gottlob was still – he still had his hand wrapped around my neck.
>
> Q.   Okay, so was he lying on the ground with you?
>
> A.   Yes, he was.
>
> Q.   Okay.  So when ERT arrived, what happened?
>
> A.   They just started kicking me and punching me and whatever else, kicking me and punching me.  And officer – after I kept yelling, I'm not resisting, for God knows how many times, maybe 20, 30 times, somebody maced me in my mouth, and I wasn't able to say anything.

---

[21]   Complaint § II.D.

7

Q.      Where were they kicking you and punching you?

A.      I my stomach, my groin. I was punched in the face several times.[22]

* * *

Q.      Okay.  You indicated that Officer Rennals twisted your leg?

A.      Yes, he did.

Q.      How did you know it was him?

A.      Because I saw him.

Q.      Okay.  How were you – how were you laying when your leg got twisted?

A.      I was laying on my side in an L-shape, rather like.  In other words, if I was upright, I would have been actually sitting up with my leg stretched out.

Q.      Okay.  So you were looking down at your feet?

A.      I was looking down at my feet.  Once I felt the pain, I looked down at my feet, yes.

Q.      Okay.  And you saw what?

A.      I saw Officer Rennals grab my toes with his left hand and my heel with his right hand and twist my leg around.

Q.      Okay.  And when did that happen?

A.      That happened while the whole thing was going on.

---

[22]      2/12/09 Deposition of Patrick Smith ("Smith Dep."), Ex. C to the Brady Decl., at 42 (incorrectly listed as Exhibit B in the Brady Decl. ¶ 5).

I mean –

Q.      So you were being punched and kicked at the time
        that that happened?

A.      Yeah, I was being kicked at that time.[23]

Plaintiff then described when the various types of restraints were placed on him, as

follows:

Q.      Okay.  And were you restrained in any way at that
        point?

A.      I was restrained before the emergency response team
        entered the booking room.

Q.      Were there any different restraints put on you when
        you were taken up off the ground?

A.      Yes.

Q.      And what was that?

A.      A chain waste [sic] – waste [sic] chain, excuse me, a
        waste [sic] chain and leg restraints.

Q.      Were those placed on you while you were still on the
        ground?

A.      Excuse me?

Q.      Were those restraints placed on you while you were
        still lying on the ground?

A.      No, they weren't.

---

[23]     *Id.* at 43-44.

Q.     When were they put on you?

A.     They were put on me after I was decontaminated.

Q.     Okay.  So when you were lifted up off the ground, did you just have wrist restraints on?

A.     Yes, they were behind my back.[24]

With leave of the Court, Deem re-opened discovery and re-deposed Sergeant DelGrosso and Officer Rennalls, this time while viewing the DVD.[25] During his second deposition on September 30, 2011, Sergeant DelGrosso identified Correction Officers Derrick Holmes and Marcelo Diaz as the two ERT members closest to plaintiff's feet during the incident.[26]  As a result of Sergeant DelGrosso's identification of Officers Holmes and Diaz, plaintiff now claims that it was Officer Holmes who twisted his foot.  Plaintiff attributes his original identification of Officer Rennalls as his assailant to the similarity in appearance between Officers Rennalls and Holmes, which his attorney describes as follows:

> plaintiff believed that he observed Rennalls twist his ankle, and there was no reason to question that belief.  However, it is now beyond gavel [sic] that plaintiff was mistaken, and

---

[24]     *Id.* at 45.

[25]     This was the first time plaintiff was afforded the opportunity to use the video of the underlying incident at the deposition of a party or witness.

[26]     *See* 9/30/11 Deposition of Sergeant DelGrosso, Ex. 14 to the Deem Decl., at 18.

understandably so.  Plaintiff was sprayed in the face with a chemical agent prior to the ERT responding, thereby impairing his ability to see clearly.  Rennalls and Holmes are both African-American males with similar facial features, they are nearly identical in height, build and weight, and their skin complexion is also very similar.[27]

Plaintiff now seeks permission to file a Second Amended Complaint,[28] pursuant to Rule 15(c) on the ground that: (1) defendants' Rule 26 initial disclosures failed to identify Officers Holmes and Diaz as persons likely to have discoverable information; and (2) defendants failed to provide plaintiff with a copy of the DVD at the time they served their Rule 26 disclosures, waiting instead until Smith completed all of his depositions to produce the DVD.

## II.    LEGAL STANDARD

Leave to amend should be freely granted when justice so requires.[29] In considering whether to grant leave to amend, courts look to whether the nonmoving party would suffer prejudice and whether the amended pleading would

---

[27]    *See* Memorandum of Law in Support of Plaintiff's Motion to File a Second Amended Complaint ("Pl. Mem.") at 10.

[28]    Plaintiff's proposed Second Amended Complaint is substantially similar to the FAC except that it substitutes "C.O. Holmes" in place of "C.O. Rennalls," along with other minor changes.

[29]    *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

be futile.[30]  Under Rule 15(a), a "'district court has discretion to deny leave for

good reason, including futility, bad faith, undue delay, or undue prejudice to the

opposing party.'"[31]  "Amendment may be prejudicial when, among other things, it

would 'require the opponent to expend significant additional resources to conduct

discovery and prepare for trial or significantly delay the resolution of the

dispute.'"[32]  Futility is assessed using the same standard applicable to motions to

dismiss, namely, whether a plaintiff has "plead enough facts to 'state a claim to

relief that is plausible on its face.'"[33]

---

[30]  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any
apparent or declared reason – such as undue delay, bad faith or dilatory motive on
the part of the movant, repeated failure to cure deficiencies by amendments
previously allowed, undue prejudice to the opposing party by virtue of allowance
of the amendment, futility of amendment, etc. – the leave sought should, as the
rules require, be 'freely given.'").

[31]  *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting
*McCarthy v. Dun & Bradstreet, Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).
However, the decision whether to grant relation back is not within the district
court's equitable discretion; relation back is mandated under Rule 15(c)(1) if the
three relation back requirements are satisfied.  *See Krupski v. Costa Crociere
S.p.A.*, 130 S. Ct. 2485, 2496 (2010).

[32]  *AEP Energy Servs. Gas Holding Co. v. Bank of Am.*, 626 F.3d 699,
725-26 (2d Cir. 2010) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d
843, 856 (2d Cir. 1981) (internal quotation marks and citation omitted)).  *Accord
Platt v. Incorporated Vill. of Southampton*, 391 Fed. App'x 62, 66 (2d Cir. 2010).

[33]  *See Tafuto v. New York State Office of Children and Family Servs.*,
No. 08 Civ. 8433, 2011 WL 2077089, at *4 (S.D.N.Y. May 25, 2011) (quoting *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Futility can be decided as a matter of law, in certain instances.[34]  For example, where the "plaintiff moves to amend to add a defendant beyond the statute of limitations period, the proposed amendment is untimely and must be denied as futile unless it relates back to the date on which the original complaint was filed."[35]  "Rule 15(c) . . . imposes three requirements before an amended complaint against a newly added defendant can relate back to the original complaint."[36]

> *First*, the claim against the newly named defendant must have arisen "out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." Fed. Rules Civ. Proc. 15(c)(1)(B), (C). *Second*, "within the period provided by Rule 4(m) for serving the summons and complaint" (which is ordinarily 120 days from when the complaint is filed, see Rule 4(m)), the newly named defendant must have "received such notice of the action that it will not be prejudiced in defending on the merits." Rule 15(c)(1)(C)(i).  *Finally*, the plaintiff must show that, within the Rule 4(m) period, the newly named defendant "knew or should have known that the action would have

---

[34]     "While the burden of proving that a proposed amendment will relate back is on the party seeking leave to amend the pleading, the party opposing the amendment has the burden of demonstrating that leave to amend would be futile*." Velez v. Fogarty*, No. 06 Civ. 13186, 2008 WL 5062601, at *3 (S.D.N.Y. Nov. 20, 2008) (footnote omitted).

[35]     *Rodriguez v. City of New York*, No. 10 Civ. 1849, 2011 WL 4344057, at *6 (S.D.N.Y. Sept. 7, 2011) (citing *VKK Corp. v. National Football League*, 244 F.3d 114, 128 (2d Cir. 2001)).

[36]     *Krupski*, 130 S. Ct. at 2491.

been brought against it, but for a mistake concerning the proper party's identity."  Rule 15(c)(1)(C)(ii).[37]

Notice, the second relation back requirement, is the "linchpin" of Rule 15(c).[38] While actual notice is preferable, "constructive notice" may suffice in some instances.  Constructive notice is derived from the presumed knowledge of the attorney who represents the original defendant(s) and who would represent the prospective defendant(s) if leave to amend were granted.

> The court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the official(s) originally sued so long as there is some showing that the attorney knew that the additional defendants would be added to the existing suit.[39]

The rationale for the constructive notice doctrine is as follows:

> The constructive notice doctrine is based on the theory that the newly added defendant is not prejudiced by the lack of notice if his attorney has already begun preparing a defense for the named defendant during the limitations period.  *See Ramos v. City of Philadelphia*, Civ.A. 01-5072, 2002 WL 32348790 at *4 (E.D.Pa. Sept.13, 2002) (The "concept of constructive notice is apparently based on the theory that if counsel is on notice to prepare a defense for additional defendants, then such defendants are not prejudiced by

---

[37]   *Id.* at 2491-92 (emphasis added).

[38]   *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986).

[39]   *Velez*, 2008 WL 5062601, at *5 (quotation marks and citations omitted).

being named at a later date").

Therefore, in the majority of cases in this Circuit applying the constructive notice doctrine, the attorneys have *clear knowledge* of the identity of the unidentified defendant, within the limitations period, such that it would be logical to assume that a reasonable attorney would either (1) inform [her] client of the prospective lawsuit or (2) takes steps to begin preparing a defense.[40]

In deciding whether the shared attorney has the requisite knowledge, the appropriate inquiry is whether that attorney "knew or should have known that the [prospective] defendants . . . would be named."[41]  Thus, "the defendants' attorney must have a reasonable basis to know which correction officers will be added as defendants in order for plaintiff's amended complaint to relate back under the doctrine of constructive notice."[42]

With regard to the third relation back requirement –  defendant's knowledge of mistake –  the focus is on what the prospective defendant knew or

---

[40]    *Id.* at *5-6 (citation omitted, emphasis added).  *Accord Gleason v. McBride*, 869 F.2d 688, 693 (2d Cir. 1989) ("In order to support an argument that knowledge of the pendency of a lawsuit may be imputed to a defendant or set of defendants because they have the same attorney(s), there must be some showing that the attorney(s) knew that the additional defendants would be added to the existing suit.").

[41]    *Gleason*, 869 F.2d at 693.

[42]    *Green v. New York City Dep't of Corr.*, No. 93 Civ. 3360, 1997 WL 96548, at *3 (S.D.N.Y. Mar. 5, 1997).

should have known, as opposed to what the plaintiff knew or should have known.

As explained by the Supreme Court:

> The question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity of Costa Crociere as the proper defendant, but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error.   Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint.[43]

The Supreme Court examined the interaction of the relation back doctrine and a

defendant's interest in repose, stating as follows:

> [T]he purpose of relation back [is] to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.  A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose.  But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.  Because a plaintiff's knowledge of the existence of a party does not foreclose the possibility that she has made a mistake of identity about which that party should have been aware, such knowledge does not support that party's interest in repose.[44]

---

[43]     *Krupski*, 130 S. Ct. at 2493 (emphasis in original).

[44]     *Id.* at 2494 (citations omitted).

The Second Circuit addressed the issue of "John Doe" defendants, pre-*Krupski*, in *Barrow v. Wethersfield Police Department*.[45]  In *Barrow*, the court focused on the third relation back requirement, stating as follows:

> Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.  Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.

> Barrow's failure in his first three complaints to specify the defendants' names, and his listing of ten "John Does" in the complaint of July 1, 1991, were because he did not know the arresting officers' names.  His amended complaint identifying six police officers by name – filed, by any calculation, after the statute of limitations had run – did not correct a mistake in the original complaint, but instead supplied information Barrow lacked at the outset.  Since the new names were added not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met.[46]

---

[45]     66 F.3d 466 (2d Cir. 1995), *as modified by* 74 F.3d 1366 (2d Cir. 1996).

[46]     *Id.* at 470.

17

## III.   DISCUSSION[47]

Plaintiff, now represented by counsel, is proposing that Officer Holmes be substituted, in effect, for Officer Rennalls, who was dismissed from this suit in late 2011,[48] after plaintiff learned that it was not possible that Officer Rennalls twisted his foot during the portion of the incident captured on the video.[49] This is not the situation where plaintiff is seeking to replace a "John Doe" defendant with a particular individual.  Nor did plaintiff mistakenly sue a defendant with a similar sounding name or who was somehow related to the proper defendant.  Here, plaintiff is seeking to replace one formerly identified individual defendant with a newly proposed individual defendant, more than five years after

---

[47]   Because a scheduling order was never issued in this case, plaintiff does not have to meet the "good cause" standard that applies where a party seeks to modify a scheduling order.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  *See also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (stating that "where the moving party has demonstrated good cause, the court may grant leave to amend the scheduling order to extend the deadline"); *Tafuto*, 2011 WL 2077089, at *4 ("[B]ecause Plaintiff has not shown good cause for her untimely amendment of the Complaint and such an amendment would be prejudicial to Defendants, Plaintiff has not satisfied the requirements of Rule 16(b), and her motion to amend is denied.").

[48]   *See* 10/21/11 Order.

[49]   The fact that plaintiff did not learn of his mistake immediately upon viewing the DVD in June 2009 demonstrates that the video does not show that any identifiable officer twisted plaintiff's foot or kicked or punched him.

the incident in question occurred.  Yet according to Smith, "[t]he amendment does not change plaintiff's claims regarding the underlying incident.  It simply changes the party that twisted his ankle [to] correct a classic case of mistaken identity."[50] But this is not a case of mistaken identity.  Rather, it is a case where plaintiff wants to substitute a defendant to better conform to the evidence as he now understands it.

In arguing for an exception to the relation back requirements, plaintiff relies primarily on *Archibald v. City of Hartford*, a "John Doe" case.[51]  In that case, the district court began by noting that the Second Circuit had addressed the issue of untimely identification of "John Doe" defendants in *Barrow*.[52]  In *Barrow*, the court held that the failure to identify John Doe defendants cannot be characterized as a "mistake" for purposes of Rule 15(c).  The issue in *Archibald* was "whether there is an exception to that Second Circuit principle [as stated in *Barrow*] when

---

[50]     Pl. Mem. at 8.

[51]     274 F.R.D. 371 (D. Conn. 2011).

[52]     *See id.* at 376 ("In *Barrow*, the Second Circuit held that 'Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.'") (quoting *Barrow*, 66 F.3d at 470).  However, the *Archibald* court noted that "the Supreme Court's decision in *Krupski* . . . has engendered a split in the district courts as to whether *Barrow* remains good law." *Id.* at 377 (quotation marks and citation omitted, ellipsis in original).

the originally named defendants unreasonably delay in producing relevant information that the plaintiff could use to identify the 'Doe' parties."[53]  The court answered this question in the affirmative.[54]

In *Archibald*, the plaintiff filed his complaint on October 1, 2009, for events relating to his arrest on October 2, 2007.[55]  The plaintiff brought suit, pursuant to section 1983, against the City of Hartford, several individual defendants, John Does 1 - 3, and Jane Doe 1.[56]  According to the plaintiff, John Doe 1 handcuffed him to a hospital bed and told the hospital staff that he was faking his injuries while Jane Doe 1 prevented plaintiff from having immediate surgery to repair his broken leg.[57]

In their Rule 26 disclosures, the original defendants named six individuals but did not name Officers Ken Labbe or Karen Spearman, the disputed defendants.[58]  Plaintiff served two sets of interrogatories, both of which asked for

---

[53]     *Id.* at 373.

[54]     *See id.* at 382 ("Defense counsel is not entitled to transform discovery of the names of police officers who engaged the Plaintiff into a game of hide-and-seek.").

[55]     *See id.* at 373.

[56]     *See id.*

[57]     *See id.*

[58]     *See id.*

the identities of all officers who came in contact with the plaintiff between October

2 and October 7, 2007.[59]  The defendants did not respond to either set of

interrogatories.[60]  On September 14, 2010, the City of Hartford produced a Rule

30(b)(6) deposition witness who identified Officers Labbe and Spearman as

officers who may be involved.[61]  Plaintiff noticed the depositions of Officers Labbe

and Spearman two days later but defendants did not produce these witnesses for

deposition until October 26, 2010, approximately three weeks after the limitations

period expired.[62]  Plaintiff filed his amended complaint on December 7, 2010,

naming Officers Labbe and Spearman in place of John Doe 1 and Jane Doe 1,

arguing for leave to amend "because he undertook diligent efforts to discover the

identities of John Doe 1 and Jane Doe 1 in a timely manner."[63]

　　　　In finding an exception to the relation back requirements as

interpreted in *Barrow*, the court relied on *Byrd v. Abate*[64] as an "exception to the

---

[59]　　*See id.* at 375.

[60]　　*See id.*

[61]　　*See id.*

[62]　　*See id.*

[63]　　*See id.* at 376.

[64]　　964 F. Supp. 140 (S.D.N.Y. 1997).  In *Byrd*, notice was imputed
because the identity of the prospective defendant "was information uniquely
accessible to Corporation Counsel" who knew that the prospective defendant

Second Circuit's seemingly categorical rule for cases in which a plaintiff attempted to discover the identity of the unknown defendant prior to the expiration of the statute of limitations but did not receive an adequate response to his discovery requests."[65]   Plaintiff's efforts to obtain the identities of the officers who interacted with him – through initial disclosures, document requests, interrogatories, and Rule 30(b)(6) depositions – were "either completely rebuffed or substantially delayed by defense counsel."  As a consequence, the court held that Officers Labbe and Spearman knew, or should have known, that they would be named as defendants "but for Mr. Archibald's inability to obtain that information from defense counsel itself."[66]   Deciding not to punish plaintiff "for [d]efendants' obstruction of [plaintiff's] counsel's diligent efforts to determine the identities of the 'Doe' officers,"[67] the court stated:

> The Court agrees with the *Byrd* court that under these circumstances, a plaintiff should not be barred from naming a new defendant on the basis that the statute of limitations has already run, since to hold otherwise would allow

---

"would have been named as a defendant well before the limitations period ended, but for plaintiff's inability to obtain this information from Counsel itself."  *Id.* at 147.

[65]   *Archibald*, 274 F.R.D. at 377 (citing cases).

[66]   *Id.* at 381.

[67]   *Id.* at 382.

defense counsel "to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended."

Finally, while the Court certainly reserves its right not to apply the exception recognized in *Byrd* to other factual circumstances, it seems to the Court indisputable that when a plaintiff asks repeatedly during discovery for the names of the officers who engaged him, the City's police department has an obligation to conduct research and to disclose the identities of those officers.[68]

*Archibald* is inapposite to the instant case, both factually and doctrinally, for a number of reasons. First, *Archibald* is a "John Doe" case and is therefore distinguishable. Contrary to plaintiff's assertion that this "distinction is one without a difference," the inclusion of "John Doe" defendants clearly signals the plaintiff's lack of knowledge as to the identity of certain defendants, thereby alerting defense counsel, at the beginning of a case, to the existence of defendants that have yet to be identified.[69]   That is not the case here as Officer Rennalls was identified from the very beginning.  Now that Officer Rennalls is viewed as an unlikely culprit, plaintiff wants to name an entirely new defendant.  Thus, this is not a case of mistaken identity but rather the intentional substitution of a defendant to better fit plaintiff's evolving theory of his case.  But *Archibald* is distinguishable

---

[68]     *Id.* at 381-82 (quoting *Byrd*, 964 F. Supp. at 146).

[69]     Here, defense counsel timely identified the John Doe ERT Sergeant as Sergeant DelGrosso.

on other grounds as well.

In *Archibald*, the John and Jane Doe defendants were identified as

having taken certain actions with respect to the plaintiff.  For example, John Doe 1

allegedly handcuffed the plaintiff to a hospital bed.  Thus, the actions attributable

to John Doe 1 enabled his identification by defense counsel.  Moreover, defense

counsel was reasonably alerted that a particular officer would be named as a

defendant once John Doe 1 was identified.  Here, in contrast, Smith identified

Officer Rennalls as the person who twisted his foot from the very beginning.[70]

Smith steadfastly maintained his identification of Officer Rennalls as his assailant

throughout most of these proceedings.  And it bears noting that Smith was well

acquainted with Rennalls before the incident even occurred.[71]  It was not until

---

[70]     *See, e.g.,* Smith Dep. at 43 ("I saw Officer Rennals [sic] grab my toes with his left hand and my heel with his right hand and twist my leg around.").

[71]     There had been a previous encounter between Smith and Officer Rennalls during the trial of an unrelated case in which Smith was involved.  Before going to court one day, Smith asked an unnamed correction officer if he could exchange a tattered blanket for a new one.  *See* Smith Dep. at 39.  Although the officer gave Smith permission to do so, Officer Rennalls sternly ordered Smith to put the blanket back.  *See id.* at 39-40 ("So he was like, put it back.  I said, the officer already said I could get one.  He's like, either you put it back, or you're going to deal with me.  I was like, what?  He's like, you heard me.  Put it back.").  Then, in March 2006, Smith had a verbal altercation with Wayne Rennalls, a fellow inmate and brother to Officer Rennalls.  *See id.* at 79. After he challenged Wayne Rennalls to a physical fight, Smith insulted Wayne Rennalls, stating "that his mother was a bitch."  *Id.* at 80.  Shortly thereafter, Wayne Renalls pointed Smith out to his brother, Officer Rennalls, while the inmates were at recreation.

Smith's recently retained counsel re-deposed Sergeant DelGrosso, on September 30, 2011, that Smith decided to substitute Officer Holmes when it became apparent that Officer Rennalls was nowhere near Smith's feet as seen throughout the DVD recording of the incident.[72]  Because Smith clearly and emphatically identified Officer Rennalls, defendants' attorney, Shannon Brady, had no reason to expect that Smith would name a different defendant nearly five years later.  Smith's substitution of Officer Holmes for Officer Rennalls was not reasonably expected of defense counsel and was not in accord with defense counsel's understanding of the case.

> It has always been Defendant's position that ERT had minimal contact with Plaintiff and that Plaintiff was subdued before ERT arrived. . . .
>
> Plaintiff has never claimed, in either his original Complaint or in his sworn deposition, that his foot was twisted while leg restraints were being placed on him.  Indeed, Plaintiff specifically testified that leg restraints were not place on him while he was still on the ground; he testified that they

_____

*See id.* at 81-82.

[72]     Contrary to Smith's testimony that "the punching and the kicking went of for about six – about six minutes," *Id.* at 44, the DVD shows Smith laying on the ground, surrounded by officers, for approximately thirty one seconds. Although Smith is being restrained during this time, the DVD does not show any officer punching or kicking Smith while he was on the ground or at any time thereafter.  It is possible that the alleged punching and kicking took place before the video started recording but, in that case, there is no new evidence to warrant the amendment adding Officer Holmes as a defendant.

were placed on him after he had been contaminated and brought to another holding cell.[73]

Furthermore, the DVD of the incident, which I watched repeatedly, does not show any officer twisting plaintiff's foot,  making the substitution of Officer Holmes even more unexpected and incapable of anticipation.[74]

Because defendants' attorney had no reason to expect that she would need to defend Officer Holmes as the officer who twisted plaintiff's foot, the constructive notice doctrine does not apply here.[75]  Thus, Officer Holmes received no notice, actual or constructive, that he would be hailed into this Court as a defendant in a section 1983 excessive force case.  To hold otherwise would subject Officer Holmes to irreparable prejudice notwithstanding plaintiff's argument that if

---

[73]     *See* Memorandum of Law in Opposition to Plaintiff's Motion to Amend First Amended Complaint at 4-5 (citing Smith Dep. at 45-47).

[74]     In fact, the DVD does not show any officer striking Smith in the manner claimed (punching and kicking).  However, the physical assault alleged by Smith could have taken place before the ERT members arrived.  Because it is possible that Officer Rennalls twisted plaintiff's foot before the DVD recording began, plaintiff may wish to consider whether Officer Rennalls should be reinstated as a defendant.

[75]     *See Rodriguez*, 2011 WL 434057, at *7 ("The constructive notice doctrine does not apply here. During the 120–day service period, the Corporation Counsel only represented the City defendant. In the course of its representation of the City, the Corporation Counsel did not receive notice of the identities of the proposed defendants. Nor did it come to have, based on investigations undertaken in connection with its representation of the City, any reasonable basis to know the identities of the individual officers involved in the alleged incident.").

the assault is unsubstantiated by the DVD, "it is irrelevant who is named as a defendant because plaintiff will not be able to meet his burden of proof."[76] Regardless of the quantum of evidence, Officer Holmes would be prejudiced by, *inter alia*, having to defend himself in a lawsuit that has heretofore proceeded on the assumption that Officer Rennalls was the assailant.  Discovery would have to be re-opened for a third time; witness's recollections will have faded even more; and the ultimate resolution of this action would be delayed needlessly.

Nor can plaintiff satisfy the third relation back requirement.  Officer Holmes was completely unaware of the possibility of being named a defendant but for Smith's mistaken identification of Officer Rennalls.[77]  At a meeting on October 11, 2011, Officer Holmes informed defense counsel that  he did not twist plaintiff's foot.[78]  Officer Holmes is willing to provide an affidavit stating so, at the Court's request.  Given Officer Holmes' denial of the factual underpinning of plaintiff's suit, Officer Holmes had no reason to suspect that he would be named as a defendant but for Smith's purported "mistake" in first naming Officer Rennalls.

---

[76]     Pl. Mem. at 10.

[77]     There is no evidence that Officer Holmes was present before the ERT arrived and started recording the incident.  Thus, if Smith were assaulted prior to the time the DVD started recording, it could not have been by Officer Holmes.

[78]     *See* Brady Decl. ¶ 3.

Officer Rennalls and Officer Holmes do not share an identity of interest; they have nothing in common other than being members of the WCDOC's ERT who responded to the incident in dispute.[79]  Thus, there was no reason for Officer Holmes to suspect that he would be substituted in place of Officer Rennalls once Smith realized that Officer Rennalls could not have twisted his foot during the portion of the incident captured on the DVD.

Archibald can be further distinguished on the basis of the defendants' conduct therein.  In Archibald, the defendants intentionally withheld the identities of the John/Jane Doe defendants and frustrated plaintiff's attempt to learn of such at every turn.  Here, in contrast, defendants' attorney identified the existence of the DVD as early as July 7, 2008, in the Rule 26(a) Disclosures.  While defendants' Rule 26(a) Disclosures did not identify Officer Holmes as a member of the ERT, that omission was not unreasonable under the circumstances.  Plaintiff unequivocally named Officer Rennalls as the officer who twisted his foot, both in his original Complaint and at his deposition.  At his deposition, plaintiff stated that his foot was twisted while he was being punched and kicked.  Yet the DVD of the incident does not show any officer punching or kicking Smith.  Moreover, Officer

_____

[79]     This is unlike the situation presented in Krupski, where the plaintiff intended to sue the actual carrier and vessel operator but mistakenly named "Costa Cruise," which was the sales and marketing agent for  "Costa Crociere," the proper corporate defendant.  See Krupski, 130 S. Ct. at 1290-91.

Holmes was identified as a member of the ERT in early May 2011, yet plaintiff's counsel took no action for five months – until Sergeant DelGrosso testified that Officer Holmes was nearest to plaintiff's feet – to add him as a defendant.  Defense counsel's conduct in originally omitting Officer Holmes' name from the Rule 26(a) Disclosures, but then identifying him in May 2011, is not the kind of intentional, bad faith conduct that would warrant the type of exception found in *Archibald.*  I reach this conclusion because defense counsel had no way to know that Officer Holmes was an "individual likely to have discoverable information."[80]

Furthermore, the fact that plaintiff was not able to view the DVD until June 15, 2009[81] was not the fault of defendants or their counsel.  Rather, it was plaintiff's status as an inmate, incarcerated by the NCDOC, that impeded his access to the DVD.  To punish defendants for something that is beyond their control, a consequence of plaintiff's incarceration, would be fundamentally unfair and in direct contravention of the rationale supporting the exceptions found in *Byrd* and *Archibald.*

In sum, Smith cannot satisfy the second and third relation back requirements.  Furthermore, the circumstances do not warrant the type of exception

---

[80]     Fed. R. Civ. P. 26(a)(1)(A)(i).

[81]     From the date of viewing, there were approximately six months left before the limitations period expired.

found in *Archibald* and *Byrd*.   Because plaintiff's proposed Second Amended

Complaint does not relate back to his original Complaint, leave to amend must be

denied on the ground of futility.

## IV.   CONCLUSION

For the reasons stated above, Smith's motion for leave to file a

Second Amended Complaint is denied.   The Clerk of the Court is directed to close

this motion (Docket Entry # 94).   A status conference is scheduled for February 21,

2012, at 4:30 p.m., in Courtroom 15C.   At this conference, the parties should be

prepared to discuss the possible reinstatement of Officer Rennalls as a defendant.

Plaintiff's recent discovery demands, as described in Deem's February 9, 2012

letter to the Court, will also be addressed at this conference.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 15, 2012

30

## - Appearances -

**For Plaintiff:**

Michael A. Deem, Esq.
Michael A. Deem, P.L.L.C.
95 Croton Avenue, Suite 37-t
Ossining, NY 10562
(914) 502-0395


**For Defendants:**

Shannon S. Brady
Westchester County Attorney's Office
148 Martine Avenue, Room 600
White Plains, NY 10601
(914) 995-3740