UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X

PATRICK R. SMITH,

                Plaintiff,

    - against -

WESTCHESTER COUNTY
DEPARTMENT OF CORRECTIONS,
WARDEN AMICCUCI; CORRECTION
OFFICER GOTTLOB; CORRECTION
OFFICER RENNALLS # 634;
EMERGENCY RESPONSE TEAM,
SERGEANT JOHN DOE,

                Defendants.
----------------------------------------------------X

**OPINION AND ORDER**

07 Civ. 1803 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

On February 12, 2012, this Court issued an Opinion and Order (the "February 12th Order") denying plaintiff's request to file a Second Amended Complaint in which he would have added Correction Officer ("CO") Derrick Holmes as a defendant.[1]  Plaintiff sought to substitute CO Holmes for defendant CO Neil Gottlob after it became apparent from a videotape of the underlying incident that CO Gottlob could not have possibly inflicted the injuries plaintiff

---

[1]  *See Smith v. Westchester County Dep't of Corr.*, No. 07 Civ. 1803, 2012 WL 527222 (S.D.N.Y. Feb. 15, 2012).

claimed he sustained.

On February 22, 2012, plaintiff moved for reconsideration of the

February 12th Order pursuant to Local Civil Rule 6.3.[2]  Plaintiff's motion for

reconsideration was denied in a Memorandum Opinion and Order dated April 9,

2012.[3]  In denying the motion for reconsideration, the Court stated:

> This Court fails to see the connection between the
> documents at issue and whether Holmes received notice of
> this action within the 120–day period provided for in
> Federal Rule of Civil Procedure 4(m).  Without a link
> between the two, there is no basis in which to draw a
> negative inference against Holmes, much less the negative
> inference that he timely received notice of the instant
> action.  Even assuming there was spoliation and a failure to
> produce, the appropriate sanction is not granting plaintiff
> leave to amend to add an entirely new defendant.  In sum,
> plaintiff has not pointed to any controlling fact or decision
> overlooked by the Court which would cause it to reconsider
> the Opinion and Order.[4]

Plaintiff appealed the denial of reconsideration to the Second Circuit which

affirmed this Court, finding all of Smith's arguments to be without merit:

> The district court was also within its discretion in denying
> Smith leave to amend the complaint to add Corrections
> Officer Holmes as a defendant.  The district court did not

---

[2]     *See* Docket Entries 104 through 106.

[3]     *See Smith v. Westchester County Dep't of Corr.*, No. 07 Civ. 1803,
2012 WL 1174663 (S.D.N.Y. Apr. 9, 2012).

[4]     *Id.* at *2.

2

err in distinguishing "John Doe" cases in which plaintiffs broadcast their continued quest to identify the party who allegedly wronged them. Although knowledge of the lawsuit can be imputed to Holmes's attorneys, they could not reasonably have known that Smith intended to sue Holmes. *See Gleason v. McBride*, 869 F.2d 688, 693 (2d Cir. 1989) ("In order to support an argument that knowledge of the pendency of a lawsuit may be imputed to a defendant or set of defendants because they have the same attorney(s), there must be some showing that the attorney(s) knew that the additional defendants would be added to the existing suit."). Smith litigated vigorously against the initial defendants, lost, and now seeks to try his luck against someone new; the district court did not abuse its discretion in denying him this opportunity.[5]

Defendant CO Gottlob, former Associate County Attorney Shannon S. Brady, and the Office of the Westchester County Attorney now seek sanctions against plaintiff's attorney, Michael A. Deem, on the ground that the motion for reconsideration violated Federal Rule of Civil Procedure 11 ("Rule 11"). Sanctions are also sought under the Court's inherent authority to regulate the conduct of attorneys appearing before it. For the following reasons, the sanctions motion is granted.

## II.   BACKGROUND

### A.   Plaintiff's Motion for Reconsideration

On February 17, 2011, this Court held a conference with Deem and

---

[5]     Mandate dated June 10, 2013, at 3-4.

Brady. At that conference, Brady stated that she has been "very diligent in providing everything to [plaintiff's counsel's] client."[6] She further stated that plaintiff had been provided "with all of the reports and the identification of everyone."[7] At a conference held on February 21, 2012, Deem demanded that Brady produce a Jail Control Logbook and Jail Ring Report for December 5, 2006, the date of the alleged incident.[8] Brady stated that the Jail Control Logbook could not be produced because it was destroyed pursuant to a three-year retention policy.[9] She further stated that she would produce the Jail Ring Report for December 5, 2006.[10]

Coupling the recent emergence of these two documents (the Jail Ring Report and Jail Control Logbook) with Brady's earlier representation that all relevant discovery had been produced, Deem leapt to the conclusion that Brady admitted to the intentional/reckless spoliation of relevant documents as well as the

---

[6]     2/22/12 Declaration in Support of Plaintiff's Motion to Reconsider the Opinion and Order Dated February 15, 2012, Ex. 2 at 1.

[7]     *Id.*, Ex. 2 at 2.

[8]     These two documents reflect what time the code for the Emergency Response Team ("ERT") was called.

[9]     *See* Transcript of 2/21/12 Conference at 3-4.

[10]     *See id.* at 3.

4

failure to produce additional relevant documents.[11]  Specifically, Deem stated:

> Defense counsel's recent admission to the intentional and
> reckless spoliation of relevant evidence and failure to
> produce relevant documents, in addition to the failure or
> refusal of the defense to advise the plaintiff or his counsel
> of such spoliation, repeated misstatement to the Court that
> all documents were provided to plaintiff, and purposeful
> sluggishness of the defense to disclose or produce relevant
> documents warrant the drawing of a negative inference
> against . . . Holmes, the defendant to be added, and defense
> counsel. The negative inference to be drawn is that Holmes
> and defense counsel received notice of this action within
> the [R]ule 4(m) period and knew that Holmes would have
> been named but for plaintiff's mistake.[12]

This Court failed to see the connection between the documents at
issue and whether CO Holmes received timely notice of the instant action.  There
simply was no basis from which to draw the negative inference that CO Holmes
timely received notice of this action.  In sum, plaintiff failed to point to any
controlling fact or decision overlooked by the Court which would cause it to
reconsider the February 12th Order.

---

[11]    Brady admitted that the Jail Control Logbook was destroyed after its
three-year retention period expired.  Brady did not, however, admit that the
destruction of the Jail Control Logbook constituted spoliation.  *See* Transcript of
2/21/12 Conference at 3-4.

[12]    Memorandum of Law in Support of Plaintiff's Motion to Reconsider
the Opinion and Order Dated February 15, 2012, at 2-3 (citation omitted).

**B.**     **Repetition of Spurious Allegations by Deem**

If the disparaging comments in the Reconsideration Memorandum

were not enough, Deem has repeated similar allegations in at least two other

lawsuits.  On May 6, 2013, Deem sent a letter to Magistrate Judge Ronald L. Ellis

in the case of *Nash v. Kressman*,[13] which states:

> Moreover, plaintiff's discovery demands are not overly broad or burdensome, in light of Westchester County's conduct in litigating several other cases involving similar claims by former inmates of the Westchester County Jail ("WCJ").  Rather, expedited discovery should be granted to prevent the destruction of highly relevant documents.
>
> For example, on February 17, 2011, in *Smith v. Gottlob*, 07-cv-1803 (SAS) (RLE) (S.D.N.Y.), Assoc. County Attorney Shannon Brady, stated to the Court, "I have litigated this case with his [*pro se*] client for almost four years, your Honor, and I have been very diligent in providing *everything* to his client (Trans., p. 7, l. 16)[.] Yet, the County defendants in that case never disclosed the identity of all the members of the Emergency Response Team in an effort to take advantage of plaintiff mistakenly naming the wrong individual.  I'm certain the Court recalls that Mr. Smith alleged his ankle was intentionally twisted with such force that his Achilles tendon was ripped.
>
> Also, the County defendants intentionally withheld a video of the underlying incident in that case until all depositions had been conducted to prevent Mr. Smith from discovering his mistake.  Only after Mr. Smith retained counsel and re-deposed Sgt. Delgrosso, WCJ, with the video was Mr. Smith's assailant identified.

---

[13]     11 Civ. 7327 (LTS) (RLE) (S.D.N.Y. Oct. 12, 2011).

And, on February 21, 2012, Ms. Brady conceded during a Court conference that one relevant document was never produced and another was unable to be produced because it had not been preserved. On appeal, the County defendants never argued that they produced or preserved the relevant documents. Rather, they argued that plaintiff was not prejudiced. The argument is incredulous considering there was significant litigation regarding the actions of "first responders' prior to ERT's arrival.

\* \* \*

Clearly, in just these few examples Westchester County defendants have proven themselves to be unwilling to follow the rules of discovery, unwilling to produce relevant information and documents, and unwilling to preserve relevant documents. But, they are willing to make what appears to be affirmative misrepresentations to the Court, repeatedly.[14]

In addition, in a letter dated June 1, 2013, to the Honorable Cathy Seibel, Deem made

the following statement in the case of *Michel v. Goldberg*:[15]

Another issue that Mr. Nash, *inter alia*, is pursuing is the apparent trend throughout several cases where relevant documents are "unavailable" or spoliation has been proven by the County defendants' own records and statements. The missing documents include, *inter alia*, several official log books and surveillance video. . . Also, the County is mandated by state regulations to keep and maintain the missing log books. Yet, the County cannot account for

---

[14]   5/6/13 Letter from Deem to Judge Ellis, Ex. 3 to the Declaration of Justin R. Adin in Support of Motion for Sanctions ("Adin Decl."), at 2-3, 4 (italics in original).

[15]   12 Civ. 85 (CS) (PED) (S.D.N.Y. Jan. 5, 2012).

them.[16]

Although Deem does not specify the cases to which he is referring, these allegations are substantially identical to the allegations raised in the letter to Judge Ellis.

Finally, during a telephone conference held on June 5, 2013, I told the parties the following with regard to Deem's repeated allegations of Brady's alleged misconduct:

> Obviously, if I thought there was spoliation or intentional destruction, I would have allowed the amended pleading. Similarly, if the Court of Appeals had thought that there was, they would have reversed me.
>
> So I am still saying to you [Deem] that if you could give up referring to the alleged spoliation in this instance, that might close the matter out.
>
> What you discover in other matters is up to you. But this one seems to me dead as a doornail, and is just poor grace and poor judgment to still be referring to it when it hasn't worked in two courts, one of which is the Court of Appeals.[17]

In debating whether to stop repeating the disparaging allegations against Brady, and thereby settle the sanctions issue without a formal motion, Deem remarked that

---

[16]    6/1/13 Letter from Deem to Judge Seibel, Ex. 4 to the Adin Declaration, at 2. Although this letter was sent in the case of *Michel v. Goldberg*, Deem raises issues in the case of *Nash v. Kressman* for purposes of comparison.

[17]    Transcript of 6/5/13 Teleconference at 6.

8

"if [Brady] says that the documents were missing or, no, we didn't destroy them or,

yes, we did destroy them pursuant to you, know, the retention policy, etc., then I

believe I can stand or continue to refer to these allegations, even though I lost at

the appellate court."[18]

## III.   LEGAL STANDARDS

### A.    Rule 11

The purpose of Rule 11 is "'the deterrence of baseless filings and the

curbing of abuses.'"[19] Filings that have a complete lack of a factual and legal basis

have been found "'to harass, cause unnecessary delay, or needlessly increase the

cost of litigation[.]'"[20] Sanctions should be imposed "where it is patently clear that

a claim has absolutely no chance of success."[21] Thus, Rule 11 sanctions are

appropriate if: the legal contentions contained in a writing are frivolous; or the

factual contentions therein do not have evidentiary support.[22] In determining if

---

[18]     *Id.* at 8.

[19]     *On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 Fed. App'x 448, 452 (2d Cir. 2009) (quoting *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994)).

[20]     *Lawrence v. Richman Group of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010) (quoting Rule 11(b)).

[21]     *Ahdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) (quotation marks and citation omitted).

[22]     *See* Rule 11(b)(2)-(3).

9

conduct is sanctionable under Rule 11, courts apply an objective standard of reasonableness.[23] In sum, litigants who show contempt for the judicial system, harass defendants, and/or cause courts and litigants to waste resources may be sanctioned under Rule 11.

## B.    Inherent Authority

Under a court's inherent authority, sanctions may be imposed where an attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[24] A court's inherent authority to impose sanctions must be exercised with discretion as must the decision of which sanction to impose.[25] Pursuant to a court's inherent authority, sanctions may be imposed for vexatious behavior "when it is harassing or annoying, regardless of whether it is intended to be so."[26] Sanctions may also be justified for "patently frivolous legal argument and egregious conduct," especially where an attorney allows his "antagonism" to

---

[23]    *See DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166 (2d Cir. 1999).

[24]    *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quotation marks and citation omitted). *Accord Ransmeier v. Mariani*, Nos. 11–175–cv, 11–640–cv, 2013 WL 1981939, at *2 (2d Cir. May 15, 2103).

[25]    *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

[26]    *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990).

"undermine his legal judgment."[27]  "Frivolous arguments with regard to a motion –

particularly where that frivolousness is coupled with inappropriate conduct that

suggests the attorney was motivated by bad faith – may also merit the imposition

of sanctions by this Court."[28]  Sanctions may be imposed under a court's inherent

authority where an attorney levels accusations of impropriety in bad faith.[29]

### C.    Spoliation of Evidence

The controlling case in this Circuit regarding the spoliation of

evidence is *Residential Funding Corp. v. DeGeorge Financial Corp.*[30]   The court

there held:

> [A] party seeking an adverse inference instruction based on
> the destruction of evidence must establish (1) that the party
> having control over the evidence had an obligation to
> preserve it at the time it was destroyed; (2) that the records
> were destroyed with a culpable state of mind; and (3) that
> the destroyed evidence was relevant to the party's claim or
> defense such that a reasonable trier of fact could find that
> it would support that claim or defense.[31]

Rule 37 of the Federal Rules of Civil Procedure  authorizes a wide range of

---

[27]    *Ransmeier*, 2013 WL 1981939, at *3.

[28]    *Id.*

[29]    *See Gallop v. Cheney*, 660 F.3d 580, 584 (2d Cir. 2011) (per curiam), *vacated on other grounds*, 667 F.3d 226, 231 (2d Cir. 2011).

[30]    306 F.3d 99 (2d Cir. 2002).

[31]    *Id.* at 107.

sanctions for discovery abuses.  If the district court determines that a party

wrongfully withheld or destroyed evidence, it may tell the jury "those facts and

nothing more; or it might [add] that the jury could, but need not, draw inferences

against [the spoliators] based on those facts; or . . . that the jury *should* draw

adverse inferences against [the spoliators] based on those facts; or that the jury

should render a verdict for the [innocent party]."[32]

## IV.   DISCUSSION

### A.   Rule 11

In the motion for reconsideration, Deem argued that a negative

inference should be drawn against CO Holmes because of alleged discovery

violations including, *inter alia*, the spoliation of evidence, namely, the Jail Control

Logbook.  In addition to the disconnect between the relief requested and the

alleged misconduct by defense counsel, there was no evidence of spoliation or any

other discovery violations.  Thus, the motion for reconsideration violated Rule 11

as the legal arguments were frivolous and the factual contentions were

unsupported.

With regard to spoliation, Deem failed to satisfy any of the three

*Residential Funding* requirements.  The first element – the duty to preserve – only

---

[32]    *Mali v. Federal Ins. Co.*, 720 F.3d 387, 392-93 (2d Cir. 2013).

extends to what the party knew, or should have known, that is: relevant to the action; reasonably calculated to lead to the discovery of admissible evidence; reasonably likely to be requested during discovery; or the subject of a pending discovery request.[33] Here, Deem did not, and could not, show that there was a duty to preserve the Jail Control Logbook. At no time prior to Deem's appearance in this action was the timing of the ERT code ever at issue. Even after Deem appeared and amended the Complaint, the time the ERT code was called was still not a disputed factual issue in this action.

The exact time the ERT code was called was not relevant to this action regardless of plaintiff's theory of the case. Whether plaintiff alleged that he was assaulted before, while, or after the ERT arrived, the fact that the code was called at 7:45, 7:50, or some other time would not lead to discoverable information. Nor did Deem assert how the Jail Control Logbook would have assisted plaintiff in identifying CO Holmes as his assailant or otherwise substantiate any part of his claim. Furthermore, prior to his deposition, plaintiff was provided with the ERT logbook showing what time the code was called. And there was a statement at the end of the ERT video indicating what time the code was called. Finally, the Jail Ring Report, which is an electronic record of when the ERT code was called, was

---

[33]     *See In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 313 (S.D.N.Y. 2013).

13

provided to Deem upon his request.  Plaintiff failed to demonstrate the necessity of the Jail Control Logbook given that the information contained therein was previously and repeatedly provided to him.  Accordingly, defendants had no duty to preserve the Jail Control Logbook.

The second element, culpability, requires a showing of at least negligence. But without a duty to preserve, Deem could not possibly demonstrate any level of culpability required to justify an adverse inference, much less that the spoliation was "intentional or reckless" as he alleged.  With regard to the third element, relevance, the "burden falls on the prejudiced party to produce some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files."[34]  In his motion for reconsideration, Deem failed to produce any evidence that the Jail Control Logbook would have substantiated plaintiff's claim.  Because plaintiff failed to satisfy all three *Residential Funding* elements, there can be no claim of spoliation in this case.  Accordingly, Deem's statement that defense counsel admitted to the spoliation of relevant evidence has no factual support.[35]  And without factual

---

[34]    *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108 (2d Cir. 2001) (quotation marks and citation omitted).

[35]    In addition to the spoliation claim, Deem alleged that defense counsel made "repeated misstatements" to the Court and displayed "purposeful sluggishness" in producing documents.  Deem provides no factual or legal support

14

support, that statement violates Rule 11.

Deem's reconsideration papers levied serious allegations of unethical conduct against Brady, without factual and legal support and any meaningful discussion or analysis. Given this utter lack of legal and factual analysis, it would be objectively unreasonable to think that the motion for reconsideration could be successful. Furthermore, Deem's papers did not even comport with the legal standard for reconsideration as set forth in his own Memorandum.

The purpose of Rule 11 "is to ensure that an attorney will 'stop, think and investigate' before filing 'baseless papers.'"[36] Clearly, Deem failed to stop, think and investigate before filing his baseless reconsideration papers. Instead, he filed a motion based on unsupported, conclusory, and incendiary allegations of misconduct by Brady. Deem's conduct "therefore exceeded the bounds of conduct acceptable to members of the bar of this court as well as those incorporated in Fed.

---

for these conclusory statements. Furthermore, these statements are belied by the record. At a conference on May 6, 2011, I stated that "[t]here is nothing that I find that Ms. Brady has done that resembles the word lies or misrepresentations at all." Transcript of 5/6/11 Conference ("5/6/11 Tr.") at 2. Nowhere does Deem explain why my assessment of Brady's conduct was incorrect.

[36]   *Zlotnick v. Hubbard*, 572 F. Supp. 2d 258, 272 (N.D.N.Y. 2008) (quoting *Cooter & Gell v. Hartmax Corp.*, 494 U.S. 384, 398 (1990)).

R. Civ. P. 11."[37]

### B.  Inherent Authority

Even if Deem's motion for reconsideration did not violate Rule 11, he would still be subject to sanctions under this Court's inherent authority.  Deem's unsupported allegations of misconduct by Brady were clearly antagonistic, egregious and made in bad faith.  Allegations of "intentional or reckless spoliation" and "repeated misstatements to the Court" are accusations of unethical conduct in derogation of Brady's professional integrity.  When presented as facts, as Deem did here, such allegations clearly rise to the level of sanctionable conduct.[38]

Deem's bad faith permeated this litigation beyond his motion for reconsideration.  For example, in a letter dated May 3, 2011, Deem accused Brady of making "grave misrepresentations" and "not dealing at arms' length with Mr. Smith while he was represented *pro se*."[39]  In that same letter, Deem stated:

---

[37]     *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993) (quotation marks and citation omitted).

[38]     Such allegations may also be actionable should Brady bring a libel suit against Deem for impugning her professionalism. *See Trump v. Chicago Tribune Co.*, 616 F. Supp. 1434, 1435-36 (S.D.N.Y. 1985) ("accusations of . . . unethical conduct, or derogation of professional integrity in terms subject to factual verification" can be libelous when presented as statements of purported fact).

[39]     5/3/11 Letter from Deem to this Court, Ex. 2 to the Adin Decl, at 1, 3.

> Plaintiff respectfully submits that the defendants' omission of all members of the ERT in their Rule 26(a) Disclosure, the submission of a doctored video, and the submission of falsified affidavits were part of a scheme designed by Westchester County and carried out by Ms. Brady to mislead the Court into believing that the ERT only consisted of three or four members, rather than eight, in order to hoodwink the Court into dismissing plaintiff's meritorious claims.[40]

At a conference held shortly thereafter, I stated:

> I think, Mr. Deem, that of the two, you are the responsible one for ratcheting up the personal attacks, I do. There is nothing that Ms. Brady has done that resembles the word lies or misrepresentations at all.[41]

At the end of the conference, I asked "Mr. Deem, in particular, to ratchet down the personal attacks. It is not welcome in this Court."[42] In continuing to claim that Brady made misstatements to the Court after I found none, Deem allowed his antagonism toward Brady to cloud his legal judgment. Deem's unyielding determination to cast Brady in a negative light, despite my repeated admonitions to ratchet down the personal attacks, demonstrates his continued bad faith in litigating this action. On this basis alone, Deem is subject to sanctions under the Court's inherent authority.

---

[40]   *Id.* at 4.

[41]   5/6/11 Tr. at 2.

[42]   *Id.* at 39.

17

## C.     Appropriate Sanctions

Defendant seeks a panoply of sanctions, most of which I find appropriate.[43] *First*, Deem is permanently enjoined from raising any allegation, statement, fact, or argument regarding Brady's alleged misconduct and/or the discovery issues in this action in any other action or proceeding before any court, agency, arbitrator, tribunal, or body, whether currently pending or to be brought in the future. *Second*, Deem shall submit a letter to Magistrate Judge Ellis in the matter of *Nash v. Kressman*, 11 Civ. 7327, and Judge Seibel, in the matter of *Michel v. Goldberg*, 12 Civ. 85, retracting any allegations, statements, facts, or arguments regarding Brady's alleged misconduct and/or the discovery issues in this action.  Deem is instructed to attach a copy of this Opinion and Order to such letters. *Third*, plaintiff's motion for reconsideration is hereby stricken.  The Clerk of the Court is directed to remove these documents from the docket (Docket Entries 104 through 106).  Finally, defendant CO Gottlob is awarded attorneys' fees and costs related to the making of the instant motion, to be imposed against Deem.  Defendant CO Gottlob is directed to submit a bill of costs and an invoice

---

[43]     Out of all the requested relief, the only requested item I find unnecessary is the issuance and docketing of a letter of apology from Deem to Brady.  This Opinion and Order is, in essence, a public censure of Deem's conduct as well as an exoneration of Brady.  Thus, a personal letter of apology is not needed to accomplish the stated goals.

18

for attorneys' fees, with supporting documentation, to this Court forthwith.

## V.    CONCLUSION

For the foregoing reasons, I hereby ORDER that the above sanctions be imposed against Michael A. Deem.  Deem may be subject to further sanctions if he is not compliant with the sanctions imposed herein.  The Clerk of the Court is directed to close this motion (Docket Entry # 133).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           September 16, 2013

19

- **Appearances -**

**For Plaintiff:**

Michael A. Deem, Esq.
Michael A. Deem, P.L.L.C.
95 Croton Avenue, Suite 37-t
Ossining, NY 10562
(914) 502-0395


**For Defendants:**

Justin R. Adin
Westchester County Attorney's Office
148 Martine Avenue, Room 600
White Plains, NY 10601
(914) 995-2893